UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00091-TBR

MICHAEL BOWLING                                                              Plaintiff,

v.

SCOTT LOWERY LAW OFFICE, P.C., and
CACH, LLC                                                                    Defendants.

## **MEMORANDUM OPINION**

This matter comes before the Court upon competing Motions for Summary Judgment. Defendants Scott Lowery Law Office, P.C. (Lowery) and CACH, LLC (CACH) (collectively "Defendants") filed the first, (Docket No. 10), to which Plaintiff Michael Bowling responded, (Docket No. 11). Bowling then filed his own Motion for Summary Judgment. (Docket No. 13.) Lowery and CACH responded, (Docket No. 16), and Bowling replied, (Docket No. 17).

Fully briefed, this matter is ripe for adjudication. For the reasons explained below, the Court will GRANT Defendants' Motion, (Docket No. 10), and DENY Bowling's Motion, (Docket No. 13).

### Background

This Fair Credit Reporting Act (FCRA) lawsuit arises from Bowling's revolving credit account, originally held with U.S. Bank, N.A. (U.S. Bank).[1] Bowling alleges that he applied for the credit account on behalf of Design Turf Technologies, Inc., a company that he owned and

---

[1] The Court need not address Bowling's claim grounded upon the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, as he has acknowledged that Defendants are entitled to summary judgment on this matter. (*See* Docket No. 17 at 9.)

operated. (Docket No. 12 at 3; *see* Docket No. 10-3 at 1.) He served as an authorized signatory on the account and used it only for business purposes. (Docket No. 12-1.)

After Bowling defaulted on the account, U.S. Bank sold and assigned Bowling's account to CACH on July 18, 2012. (Docket No. 10-3 at 1.) On April 1, 2013, CACH assigned the account to Lowery for professional collection services. On April 1, 2013, Bowling learned that Lowery, acting on CACH's behalf, issued a "hard inquiry" into his credit history. A hard inquiry is essentially a credit check: a full credit inquiry conducted when an individual applies for a loan or line of credit. Each hard inquiry can result in a credit score's reduction by up to five points. *See Harkins v. Diversified Collection Servs., Inc.*, 2012 WL 5928997, at *1 n.1 (D. Md. Nov. 26, 2012).[2] (*See* Docket No. 12-2.)

Bowling explains that hard inquiries are permitted only in connection with an application for either credit or insurance. Bowling claims that Defendants performed this unauthorized hard inquiry without a permissible purpose under the FCRA. According to Bowling, Defendants' hard inquiry remained on his credit report and was viewable to third-party users who requested a copy of it, ultimately reducing his credit score. (Docket No. 1 at 2-3.)

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all

---

[2] By contrast, third parties who request a consumer's credit report cannot view soft inquiries; consequently, soft inquiries generally have no detrimental effect upon the lending process. *See Banga v. Experian Info. Solutions, Inc.*, 2013 WL 5539690, at *2 (N.D. Cal. Sept. 30, 2013).

reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

Congress enacted the FCRA, 15 U.S.C. § 1681 *et seq.*, in an effort to protect consumers from erroneous or arbitrary credit reporting. Among other safeguards, the law regulates the permissible uses of "consumer reports," which summarize an individual's credit history and creditworthiness. The FCRA delineates the exclusive circumstances under which a credit reporting agency may furnish a credit report.[3] Section 1581b(a)(3), in relevant part, explains that

---

[3] Specifically, § 1681b provides:

> A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
> 
> . . . .

a consumer credit report is furnished for a "permissible purpose" when the party requesting the report "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

Courts have held that a plaintiff must establish three elements to sustain a claim of improper use or acquisition of a credit report: that there was a "consumer report" within the meaning of the statute, that the defendant used or obtained it, and that the defendant did so without a permissible statutory purpose. *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006) (citing *Phillips v. Grendal*, 312 F.3d 357, 364 (8th Cir. 2002); *Gillom v. Ralph Thayer Auto. Livonia, Inc.*, 444 F. Supp. 2d 763, 771 (E.D. Mich. 2006)). Section 1681b(a)(3)(A) authorizes consumer reporting agencies to furnish a consumer report to those that it has reason to believe "intend[] to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the

---

(3) To a person which it has reason to believe—
(A)  intends to use the information in connection with a credit transaction involving the consumer on whom the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
(B)  intends to use the information for employment purposes; or
(C)  intends to use the information in connection with the underwriting of insurance involving the consumer; or
(D)  intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's responsibility or status; or
(E)  intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
(F)  otherwise has a legitimate business need for the information . . . .

15 U.S.C. § 1681b(a)(3).

extension of credit to, or review or collection of an account of, the consumer." The statute makes no distinction between hard and soft inquiries; either is permissible if made for an appropriate purpose.

At the heart of the dispute is the proper characterization of Bowling's debt. Crucial to Bowling's argument is the definition of "consumer report" established by 15 U.S.C. § 1681a(d)(1):

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> *(A) credit or insurance to be used primarily for personal, family, or household purposes;*
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

*Id.* (emphasis added). Bowling asserts that Defendants lacked a permissible purpose for requesting his consumer report because the account at issue was a business account not used for personal, family, or household purposes. Indeed, the documents associated with the card label it a "Business Visa." (Docket No. 10-3 at 12.) He argues that Defendants requested a copy of his consumer report in order to collect a business account, an objective not encompassed by the permissible purposes set forth by the statute. Bowling argues that the above definition also applies to § 1681b(a)(3)(A).[4]

---

[4] As discussed above, § 1681b(a)(3)(A) permits the furnishing of a consumer report to one who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."

However, the Court, like Defendants, perceives no such intimate relationship between the statutory provisions. Because § 1681a(d)(1) is distinct from § 1681b, its definition of "consumer report" is largely irrelevant to this issue. Although the two statutes must be construed together to determine if the report in question constitutes a "consumer report" under the FCRA, *see* § 1681a(d)(1)(C), the statute does not indicate that the provisions must necessarily be read together. Barring such a provision, § 1681a(d)(1) alone governs the issue. Section 1681a(d)(1) authorizes the use of a credit report in order to collect "an account" that belongs to a consumer. Accordingly, a debt collector may obtain a consumer report for the purpose of collecting an outstanding debt. *See Duncan v. Handmaker*, 149 F.3d 424, 427 (6th Cir. 1998) ("Section 1681b(3)(A) of the FCRA focuses on the extension of credit and the collection of debt. It permits a party to obtain a consumer report 'in connection with a credit transaction . . . involving the extension of credit to, or review or collection of an account of, the consumer.'"). Because the FCRA authorizes Defendants' use of the consumer report at issue, Bowling's complaint must fail.[5]

To support his argument for the application of § 1681a(d)(1)'s provisions to § 1681b, Bowling points to the Fair Trade Commission's (FTC) interpretation.

*Section 604—Permissible Purposes of Reports*

---

[5] Perhaps recognizing that § 1681b(a)(3)(A) authorizes transactions of the sort presented here, Bowling does not contest the fact that a debt collector has a permissible purpose to obtain a consumer report under the statute. Instead, he contends that an inquiry for a consumer report based on a business debt may not be disclosed to third-party users that request the consumer report. (Docket No. 12 at 8.) This contention, however, finds no basis in Bowling's Complaint, which emphasizes Defendants' violation of §1681b "by falsely and impermissibly requesting that one or more credit reporting agencies furnish it with a copy [of] Mr. Bowling's credit report in connection with a credit transaction that Mr. Bowling did not initiate." (Docket No. 1 at 4.) Bowling does not allege that the inquiry was ever disclosed to "any person." *See* 15 U.S.C. §1681b(c)(3). Regardless, the fact that the inquiry is subject to disclosure does not render it impermissible under the FCRA.

6

> "A consumer reporting agency may furnish a consumer report under the following circumstances and no other: * * *"
>
> 1. Relation to Section 603
>
> Sections 603(d)(3) and 604 must be construed together to determine what are "permissible purposes, because section 603(d)(3) refers to "purposes authorized under section 604" (often described as "permissible purposes" of consumer reports, and some purposes are enumerated in section 603 . . . . Subsections of sections 603 and 604 that specifically set forth "permissible purposes" relating to credit, insurance, and employment, are the only subsections that cover "permissible purposes" relating to those three areas. Section 604(3)(E), a general subsection, is limited to purposes not otherwise addressed in section 604(3) (A)-(D).
>
>> A. Credit. Sections 603(d)(1)—which defines "consumer report" to include certain reports for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance primarily for personal, family, or house hold purposes—and 604(3)(A) must be read together as fully describing permissible purposes involving credit for obtaining consumer reports. *Accordingly, section 604(3)(A) permits the furnishing of a consumer report for use in connection with a credit transaction involving the consumer, primarily for personal, family or household purposes, and involving the extension of credit to, or review or collection of an account of, the consumer.*

Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18804-01 (May 4, 1990) (emphasis added).

The FCRA charges the FTC with enforcing the Act. 15 U.S.C. § 1681s(a). Bowling contends that given this authorization, the FTC's interpretation is entitled to the level of deference established in *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S.

837 (1984). *Chevron* explains that under certain circumstances, an agency determination is binding unless it is procedurally defective, arbitrary or capricious in substance, or manifestly contrary to Congress's clear intent. *Id.* The instant circumstances, however, do not call for such deference. The FTC's Commentary on the FCRA was not adopted in a rulemaking or other formal proceeding that would render *Chevron* deference apposite. Rather, the FTC itself states, "The interpretations in the Commentary are not trade regulation rules or regulations, and . . . they do not have the force or effect of statutory provisions." Commentary on the Fair Credit Reporting Act § 600.2. The Supreme Court instructs that such agency statements are not subject to broad *Chevron* deference. *See United States v. Mead Corp.*, 533 U.S. 218 (2001); *Christensen v. Harris Cnty.*, 529 U.S. 576 (2000). Specifically, interpretations that lack the force of law—including those contained in opinion letters, policy statements, agency manuals, and enforcement guidelines—do not warrant *Chevron* deference. They are "'entitled to respect,' but only to the extent that they are persuasive." *Christensen*, 529 U.S. at 577 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Even were *Chevron* deference applicable, Bowling's position would nonetheless fail. The Supreme Court has set forth a two-step analysis for reviewing an agency's interpretation of a statute it administers. *Chevron*, 467 U.S. 837 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 273 (6th Cir. 1994). The judiciary, not the administrative agency, is the "final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron*, 467 U.S. at 843 n.9. Here, the first

step of the *Chevron* analysis reflects Congress's unambiguous intent. Section 1681b(a)(3)(A), in relevant part, authorizes a consumer reporting agency to furnish a consumer report:

> To a person which it has reason to believe—
>
> > (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . .

*See also Etefia v. Russell Collection Agency, Inc.*, 20 Fed. Appx. 485, 386 (6th Cir. 2001) (recognizing a debt collector's statutory authority to "review the collection of an account of a consumer"). The provision includes reports to be used for predictable business needs, including collecting debts owed under an agreement. *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 816 (W.D. Ky. 2003). The statute is accordingly clear on its face.

Regardless, Bowling relies upon FTC comments interpreting § 1681a(d)(1). More significant are the comments interpreting §1681b(a)(3)(A), which state:

> 1. Reports Sought in Connection with the "Review or Collection of an Account"
>
> A. Reports for collection. A collection agency has a permissible purpose under this section to receive a consumer report on a consumer for use in attempting to collect that consumer's debt, regardless of whether that debt is assigned or referred for collection. Similarly, a detective agency or private investigator, attempting to collect a debt owed by a consumer, would have permissible purpose to obtain a consumer report on that individual for use in collecting that debt. *An attorney may obtain a consumer report under this section on a consumer for use in connection with a decision whether to sue that individual to collect a credit account.*

Commentary on the Fair Credit Reporting Act, 55 FR 18804-01 (emphasis added). This commentary does not indicate that a debt must be incurred for personal, family, or household purposes to fall under § 1681b(a)(3)(A). Rather, the commentary notes that the statute applies when an attorney obtains a consumer report "for use in connection with a decision whether to sue that individual to correct a credit account." *Id.*

Bowling points to *Pintos v. Pacific Creditors Association*, 605 F.3d 665 (9th Cir. 2009), wherein the Ninth Circuit explained, "To qualify under § 1681b(a), the 'credit transaction' must both (1) be a 'credit transaction involving the consumer on whom the information is to be furnished' and (2) involve 'the extension of credit to, or review or collection of an account of, the consumer.'" *Id.* (quoting § 1681b(a)). Bowling contends that even if he was personally responsible for the credit account, Defendants nonetheless cannot prove that the debt constituted "a credit transaction involving the consumer on whom the information is to be furnished." *Id.* Bowling reasons that a "credit transaction" does not include transactions with a business purpose.

*Pintos* held that § 1681b(a)(3)(A) did not authorize the defendant collection agency to obtain Pintos's credit report, as that case did not involve a transaction for which she sought credit or the collection of a judgment debt. When Pintos's vehicle was sold by a towing company, the sale price failed to cover the amount Pintos owed. The towing company transferred its deficiency claim against her to a collection agency, which obtained Pintos's credit report in connection with its effort to collect the debt. Pintos asserted that no FCRA-sanctioned purpose supported the obtaining of her credit report and that its provision thereby violated the FRCA. The Ninth Circuit reasoned that although Pintos owned the car that was towed, this fact did not satisfy the requirement that the consumer initiate the credit transaction. Pintos was not a

participant in the transaction; instead, she was "oblige[d] to become associated" with it after her vehicle was towed and the deficiency claim arose. *Id.* at 675-76 (citing *TRW Inc. v. Andrews*, 534 U.S. 19 (2001)).

Pintos, therefore, was brought unknowingly into the transaction, with no intent to initiate it. This cannot be said of Bowling; to the contrary, he initiated the transaction by seeking and obtaining credit. It was this transaction that ultimately resulted in Defendants' accessing Bowling's credit report in an attempt to collect on the outstanding debt that he accumulated. Section 1681b(a)(3)(A) authorizes the use of a consumer credit report to collect on unpaid debt. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011), *Fritz v. Capital Mgmt. Servs.*, 2013 WL 4648370 at *4 (W.D. Pa. 2013); *see also Phillips v. Grendahl*, 312 F.3d 357, 366 (8th Cir. 2002); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Precedent confirms the Court's conclusion. The facts of the instant case recall those of *Baker v. American Express Travel Related Services Company, Inc.*, 2002 WL 1205065 (W.D. Ky. May 28, 2002). Baker's employer provided him with an American Express corporate credit card and suggested that he would not be personally liable for business charges placed on the card. The card member agreement stated that Baker was a co-obligor on the account and that American Express could collect the amount of such charges directly from him. *Id.* at *1. When American Express obtained Baker's credit report, he alleged an FCRA violation, arguing that no permissible purpose justified the inquiry. This Court rejected Baker's argument, finding instead that the inquiry was permissible because American Express extended credit to him "by virtue of his use of the corporate credit card." *Id.* "Because American Express was thus extending credit to the plaintiff, it had a permissible purpose for obtaining his credit report." *Id.* (citing 15 U.S.C. § 1681b(a)(3)(A)). The Court noted that its interpretation of the FCRA harmonized with

the goal of "limiting the disclosure of consumer reports to those with a legitimate need to know about a consumer's creditworthiness." *Id.* (citing *Duncan*, 149 F.3d at 428 (6th Cir. 1998)). The Court also explained that its interpretation was consistent with the FTC's interpretation of § 1681b(a)(3)(A).[6]

Here, as in *Baker*, Bowling obtained a revolving credit card account to pay business expenses and served as an obligor of the debt associated with the account. US Bank's extension of business credit to Bowling afforded it a legitimate need to learn about his creditworthiness. *See Estiverne v. Sak's Fifth Ave.*, 9 F.3d 1171, 1173 (5th Cir. 1993) ("[O]ne of the authorized purposes for disclosure of consumer information is a 'legitimate business need for the information in connection with a business transaction involving the consumer.'").

Finally, Bowling's apparent surprise that his credit report was subject to review is misplaced. Bowling applied for the card and was listed an obligor. The cardmember agreement that Bowling executed reflects this understanding, as it unambiguously states that Bowling would be individually liable for any charges made to the account. He thereby agreed to assume personal responsibility for the debt's payment.[7] By executing the cardmember agreement,

---

[6] *Baker* pointed to a June 2001 staff opinion letter issued by the FTC. This letter interpreted § 1681b(a)(3)(A) to allow a lender to obtain a credit report on a consumer who has accepted personal liability for a business debt. Although the FTC opinion articulated in this informal staff opinion letter was not binding, the Court deemed it persuasive, as it was consistent with the FCRA's underlying objectives and the statute's plain language. *Id.* at *3.

[7] Bowling's cardmember agreement provides in part:

> 24. Liability for Charges: You are individually liable and you and the Business (which includes the individual or co-obligor(s) who executed the application for credit) are jointly liable for all charges to the Account, including, without limitation, all fees and INTEREST CHARGES. In addition, if you are the individual or co-obligor who executed the application for credit, you are individually liable and jointly liable with the Business for all charges to the Account for your use of the Account, including, without limitation, all fees and INTEREST CHARGES. You are responsible and agree to pay for all charges in

Bowling authorized U.S. Bank and its assignees to access his credit report to obtain information relevant to the collection of any amount due on the account.[8] As in *Baker*, Bowling expressly agreed that his credit information would be accessible.

## CONCLUSION

Although the Court recognizes Bowling's displeasure that his credit report reflects Defendant's hard inquiry, he has failed to allege any violation of the FCRA. Accordingly, for the reasons explained above, Defendants' Motion for Summary Judgment, (Docket No. 10), is GRANTED, and Bowling's Motion for Summary Judgment, (Docket No. 13), is DENIED. A separate Judgment shall enter concurrently herewith.

---

connection with your use of the Card and Account regardless of whether you have been reimbursed by the Business.

(Docket No. 16-3 at 3.)

[8] The cardmember agreement further states:

33. Collecting Credit Information about You: You authorize us to make any credit, employment, and investigative inquires we feel are appropriate related to giving you credit or collecting amounts owed on your Account. You agree that a consumer credit report or business bureau file report, as applicable, may be requested periodically from one or more credit reporting agencies ("Credit Bureaus") and used in connection with your application and any update, renewal or extension of credit. We will provide information about you, your Account or your credit history to Credit Bureaus and others who may properly receive that information.

(Docket No. 16-3 at 4.)